UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL MCGOVERN,

                           Plaintiff,

        v.                                                    Case No. 15-CV-10057 (KMK) (PED)

NANCY A. BERRYHILL,                                           ORDER ADOPTING R&R
Acting Commissioner of Social Security,

                           Defendant.

KENNETH M. KARAS, District Judge:

        Michael McGovern ("Plaintiff") brings this Action against the Acting Commissioner of

Social Security ("Defendant" or the "Commissioner"), pursuant to 42 U.S.C. § 405(g),

challenging the decision of an administrative law judge (the "ALJ") to deny Plaintiff's

application for disability insurance benefits on the ground that Plaintiff was not disabled within

the meaning of the Social Security Act, 42 U.S.C. § 423, et seq.  The Court referred the case to

Magistrate Judge Paul E. Davison ("Judge Davison") pursuant to 28 U.S.C. § 636(b)(1)(A).  (*See*

Dkt. No. 7.)  Plaintiff and Defendant cross-moved for judgment on the pleadings.  (Dkt. Nos. 18,

26.)  Judge Davison issued a thorough Report and Recommendation (the "R&R") recommending

that the Court deny Plaintiff's Motion for Judgment on the Pleadings and grant Defendant's

Cross-Motion for Judgment on the Pleadings.  (R&R 32–33 (Dkt. No. 35).)  Plaintiff filed

objections to the R&R dated August 23, 2017, (*See* Pl.'s Obj. to the R&R ("Pl.'s Obj.") (Dkt.

No. 22)), and Defendants filed a response on September 15, 2017, (Govt. Resp. to Pl.'s Obj.

("Govt. Resp.") Dkt. No. 43)).  For the reasons discussed below, the Court adopts the R&R in its

entirety.

I. Discussion

A. Standard of Review

1. Review of a Report and Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Pursuant to § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to a report and recommendation, the district court reviews de novo the portions of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, so long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)). "[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (internal quotation marks omitted); *see also Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 517 (S.D.N.Y. 2013) (refusing to consider objections filed one day late). Moreover, objections that are "merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in

the original petition will not suffice to invoke de novo review of the magistrate's recommendations." *Vega v. Artuz*, No. 97-CV-3775, 2002 WL 31174466, at \*1 (S.D.N.Y. Sept. 30, 2002) (italics omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (same).

### 2. Review of a Social Security Claim

In reviewing a Social Security claim, the reviewing court does not determine for itself whether the plaintiff was disabled and therefore entitled to Social Security benefits. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("[I]t is not our function to determine de novo whether [the] plaintiff is disabled." (italics, alteration, and internal quotation marks omitted)). Instead, the reviewing court considers merely "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g in part by* 416 F.3d 101 (2d Cir. 2005). Accordingly, a court may overturn an ALJ's determination only if it was "based upon legal error" or "not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted). "'Substantial evidence' is 'more than a mere scintilla'[;] . . . [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In considering whether substantial evidence supports the ALJ's decision, the reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted).

In determining whether a claimant is entitled to disability insurance benefits, the ALJ follows a five-step analysis:

3

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v). The claimant bears the burden of proof for the first four steps. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). If, however, the claimant proves that his impairment prevents him from performing his past work, the burden shifts to the Commissioner at the fifth step. *See id.* There, the Commissioner must prove "that there is other gainful work in the national economy that [the claimant] could perform." *Kamerling v. Massanari*, 295 F.3d 206, 210 (2d Cir. 2002). If the ALJ determines that "significant numbers of jobs exist in the national economy that the claimant can perform," *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014), the ALJ must deny disability insurance benefits to the claimant, *see* 20 C.F.R. § 404.1520(a)(4)(v).

4

B. Analysis

The Court adopts the recitation of facts set forth by Judge Davison in the R&R, (*see* R&R 1–16), and assumes the Parties' familiarity with it. The Court will repeat only those facts relevant to the consideration of Plaintiff's objections.

Plaintiff objects to Judge Davison's recommendation that Defendant's Cross-Motion be granted and that Plaintiff's opposition and Cross-Motion be denied. (*See id.* at 32.) Although Plaintiff's objections are not a paragon of clarity, the Court finds that the objections are at least sufficiently detailed to allow meaningful and de novo review of the R&R without needlessly duplicating the efforts of the magistrate judge. *Cf. Vega*, 2002 WL 31174466, at *2 (refusing to consider objections because the claimant had "simply rearranged many portions of his original brief" and "in fact, [the claimant] cite[d] back to his original brief in support of his renewed objections"). Therefore, interpreting the language of the objections as broadly as possible, it appears that Plaintiff is objecting to Judge Davison's determination that the Commissioner had substantial evidence to support the conclusion that Plaintiff was not disabled under 20 C.F.R. § 416.920(a)(4).

With respect to the first step there is no argument that Plaintiff was not engaged in gainful employment at the time the application was considered. (Administrative Record ("A.R.") 23 (Dkt. No. 17).) Nor does either Party dispute that, at step two, the severe impairments at issue are limited to Plaintiff's obstructive sleep apnea, obesity, and lumbar degenerative disc disease. (*See id.* at 24.) Because the ALJ found, at step three, that Plaintiff's severe impairment, or combinations therein did not "me[et] or medically equal[] the severity of one of the listed impairments in . . . Appendix 1," (*id.*), the ALJ proceeded to step four of the analysis and to determine whether Plaintiff had "the residual functional capacity to perform light

5

work," which is what Plaintiff had previously performed, (*id.* at 25). In reviewing the entirety of the administrative record evidence, the ALJ found that Plaintiff had such residual functional capacity to perform his past work. (*See id.*)

### 1. Residual Functional Capacity

The question before the Court, then, is whether there was substantial evidence to determine that Plaintiff had not met the burden of proof in showing that no such residual functional capacity existed. Here, the ALJ's finding was informed by, and consistent with, the examining consultant's opinion, the medical records, and the ALJ's own observations. Specifically, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," (*id.* at 27), Plaintiff's residual functional capacity currently allows Plaintiff to be "fully alert," and his "sleep apnea is controlled by the use of medication and CPAP machine," (*id.*). Moreover, there were "no physical exams that indicate[d] any evidence of severe sleep deprivation," during the relevant period or at any time thereafter. (*Id.*) Plaintiff's own physician, Dr. Astua, found that Plaintiff "has reported better sleep with treatment," and found Plaintiff to be "alert and awake" and without "significant signs of cognitive defects or deterioration." (*Id.* at 26.) Dr. Astua also determined that Plaintiff would only be prevented from engaging in certain activities for prolonged periods of time, (i.e. six to eight hours), and that was further qualified as only being the case "on some days." (*Id.* at 26, 1032–33.) Plaintiff's other physician, Dr. Bhagavath, found that plaintiff could "lift/carry 5-10 pounds," and "could do less physically demanding work." (*Id.*)

6

Plaintiff contends that the ALJ erred in determining that Plaintiff could return to his past work as a retail manager because he last performed that job in 2009. (Pl.'s Obj. 2–3.)[1] Yet, taking notice of Plaintiff's work within the past fifteen years was appropriate, as the regulations provide that an occupation performed within fifteen years prior to the ALJ's decision may be considered in determining disability. See 20 C.F.R. §§ 404.1520(f), 404.1560(b)(1), 404.1565(a). Moreover, the ALJ obtained, and relied upon, the testimony of vocational expert Gerald Belchick in determining whether there were jobs that Plaintiff could perform given his functional capacity and other vocational consideration. (See A.R. 27–28.) The vocational expert found that, given the "light exertional demands" of Plaintiff's prior work, Plaintiff would be able to do all of his past work given his functional capacity as determined by the ALJ, a determination that was supported by substantial evidence. (See id. at 27, 60–61.) This testimony was properly relied upon in determining that Plaintiff was not disabled. See Butts v. Barnhart, 416 F.3d 101, 104 (2d Cir. 2005) (finding that the Commissioner may meet his or her burden "that the claimant is capable of working" by "presenting a vocational expert to testify that a person with [the claimant's] attributes and qualifications could find" work similar to the claimant's past relevant work); Chaffin v. Colvin, 999 F. Supp. 2d 468, 473 (W.D.N.Y. 2014) ("It is well-established that the elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden . . . to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing," (citing Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)); see also Mancuso v. Astrue, 361 F. App'x 176, 179 (2d Cir. 2010) ("The Commissioner may rely on a vocational expert's testimony concerning the

---

[1] For ease of reference, given the lack of page numbers on Plaintiff's objections, the Court cites to the ECF-generated page numbers stamped at the top of Plaintiff's filings.

availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983))). Because Plaintiff fails to rebut the specific evidence relied upon by the ALJ, the Court finds that the ALJ committed no error in relying upon such prior employment and vocational testimony in determining that Plaintiff was capable of performing past relevant work.

Plaintiff, in an attempt to counteract the underlying records, relied upon his subjective testimony that his functional capacity did not allow him to perform a significant range of light work. The ALJ evaluated this subjective testimony concerning "the intensity, persistence and limiting effects of [Plaintiff's] symptoms," and found it to be "not entirely credible." Such an evaluation is within the ALJ's discretion when determining whether a claimant is entitled to disability benefits. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("[The ALJ] may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."); *Guzman v. Astrue*, No. 09-CV-3928, 2011 WL 666194, at *16 (S.D.N.Y. Feb. 4, 2011) (same). While an ALJ's impressions of a plaintiff's testimony may not themselves be sufficient to outweigh a treating physician's opinion, *see, e.g., Doyle v. Apfel*, 105 F. Supp. 2d 115, 120 (E.D.N.Y. 2000) ("It is improper . . . for the ALJ to substitute his judgment for that of the treating physician as to the significance of a claimant's ability to perform [various] activities."); *cf. Stevens v. Barnhart*, 473 F. Supp. 2d 357, 364 (N.D.N.Y. 2007) ("[I]t cannot be said that the ALJ disregarded all medical evidence from [the] [p]laintiff's treating physicians and instead relied on her impression of the [p]laintiff's testimony."), the substance of a plaintiff's testimony is nonetheless part of the body of evidence that an ALJ may consider, along with other evidence, when evaluating the weight to be afforded a treating physician's opinion, *see Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (considering, among other things, the "plaintiff's own

testimony" in determining that the treating physician's opinion was not controlling); *Nelson v. Sec'y of Health & Human Servs.*, 676 F. Supp. 44, 47 (W.D.N.Y. 1987) (same). Moreover, it is the province of the ALJ to assess Plaintiff's credibility, *see Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 538 (S.D.N.Y. 2015) ("It is the function of the Commissioner, not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant" (alterations omitted)), and the Court generally has no occasion here to second-guess the ALJ's determination as to the reliability of a claimant's testimony, *see Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) ("[A]n ALJ's credibility determination is generally entitled to deference on appeal."). Where an ALJ's findings are supported by substantial evidence, courts "must uphold the ALJ's decision to discount a claimant's subjective complaints." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984); *see also Selian*, 708 F.3d at 420 (noting that "an ALJ's credibility determination is generally entitled to deference on appeal").

The ALJ determined that Plaintiff's allegations were not credible for a variety of reasons. Specifically, the ALJ noted that Plaintiff's testimony regarding the severity of his limitations were in conflict with the evidence in the record. Plaintiff had no trouble conducting the activities of daily living, such as cooking twice a week, traveling on public transportation independently and for over an hour to get to his administrative hearing, "without significant restrictions." (A.R. 27.) The ALJ also found that Plaintiff's sleep apnea was controlled via the modafinil prescription for residual sleepiness and use of the CPAP and BiPAP machines. (*See id.*) Moreover, the ALJ explained that "[a]t the hearing, [Plaintiff] was noted to be fully alert and physical examination reports also indicate that he has not exhibited signs of significant sleepiness." (A.R. 27.) Additionally, the ALJ noted that Plaintiff works "20-hours per week at a

light level job," belying any claim that he lacked any capacity to work. (*Id.*)[2] Ultimately, the

ALJ found that Plaintiff's testimony regarding his functional limitations did not coincide with

the medical records as a whole. (*See id.*) Given the presence of substantial evidence in the

record, the Court declines to upset the ALJ's credibility determination.

Accordingly, the Court concludes that there was substantial evidence supporting the

finding that Plaintiff had the residual functional capacity to perform past relevant work.

### 2. Treating Physician Rule

To the extent that Plaintiff also objects on the grounds that the ALJ and Judge Davison

committed error in failing to give appropriate deference to the opinion of Plaintiff's treating

physician, Dr. Astua, (Pl.'s Obj. 2), the Court finds the ALJ did not err in his evaluation of Dr.

Astua's medical opinion evidence.

When determining eligibility for disability insurance benefits, the Social Security

Administration "give[s] more weight to opinions from . . . treating sources, since these sources

are likely to be the medical professionals most able to provide a detailed longitudinal picture of

[the claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). Consequently, the ALJ

reviewing a claim for disability insurance benefits must likewise give "deference to the medical

---

[2] Although Plaintiff contends that the ALJ found he was not disabled because he worked part-time after the onset of his alleged disability, (*see* Pl.'s Obj. 2–3), that is not an accurate representation of the ALJ's findings. Indeed, the ALJ expressly found that Plaintiff's part-time maintenance job *was not* substantial gainful activity for the purpose of determining whether Plaintiff was in fact disabled during the relevant period. (*See* A.R. 23 ("The claimant testified that he is currently working on a part-time basis, doing maintenance work . . . . Based on his earnings, *this work does not represent substantial gainful activity.*" (emphasis added)).) Rather, the ALJ found that Plaintiff's part-time employment "is evidence that his allegations regarding the extent of his limitations are not entirely credible," as is the fact that Plaintiff "can perform all of his activities of daily living, including traveling on public transportation independently, without significant restrictions." (*Id.* at 27.) As previously discussed, such credibility determinations are entitled to deference on appeal.

opinion of a claimant's treating physician." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Id.* Accordingly, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

If the ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider a number of factors in determining how much weight the opinion is due: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion was from a specialist; and (v) any other factors that "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ need not always recite each factor. *See Halloran*, 362 F.3d at 32 (noting that "it [was] unclear on the face of the ALJ's opinion whether the ALJ considered (or even was aware of) the applicability of the treating physician rule," but nevertheless concluding that "the substance of the treating physician rule was not traversed"); *see also Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").

Judge Davison relied on several reasons for discounting Dr. Astua's opinion. Most relevant here, "the balance" of Dr. Astua's treatment of Plaintiff postdated the relevant period during which Plaintiff was insured. (R&R 23; A.R. 26–27, 1029–35, 1126–28 (Dkt. No. 17).) As Judge Davison rightly noted, the spirit of the treating physician rule was inapplicable in this case. The ALJ is to award "controlling weight" to treating physician opinions as a rule based on

11

the belief that a treating physician "may bring a unique perspective" because of his or her long treatment history with a claimant. 20 C.F.R. § 303.1526(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). However, given Plaintiff's lack of treatment from Dr. Astua during the relevant period, there is simply no basis to find that such a "detailed longitudinal picture" existed between Plaintiff and Dr. Astua and his reports provide limited information about Plaintiff's medical condition or his ability to work during the time period for which he sought benefits. *See Brown v. Comm'r of Soc. Sec.*, 709 F. Supp. 2d 248, 258 (S.D.N.Y. 2010) (rejecting claim that certain records should have been considered as they related to treatment provided "in 2005 and 2007 – many years after the period at issue [2001-2003]"). Upon its own review of the record, the Court finds substantial evidence in support of the ALJ's decision not to give controlling weight to the opinions of Dr. Astua and the studies conducted by him.

Because Plaintiff has offered no other specific objections, the Court, having done a de novo review of the thorough R&R, concludes that Judge Davison committed no error.

## II. Conclusion

For the foregoing reasons, the Court adopts Judge Davison's R&R in its entirety, denies Plaintiff's Motion for Judgment on the Pleadings, and grants Defendant's Cross-Motion for Judgment on the Pleadings. The Clerk of the Court is respectfully directed to terminate the

pending motions, (Dkt. Nos. 18, 42), enter judgment for Defendant, mail a copy of this Order to

Plaintiff, and close this case.

SO ORDERED.

DATED:      March 29, 2018
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE